# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                             No. CR 18-0836 JB

CHRISTOPHER THEODORE CHAVEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Responses to Pre-Sentence Report, filed December 5, 2018 (Doc. 80)("Objections").[1] The primary issues are: (i) whether the quantity of controlled substances that Defendant Christopher Chavez allegedly possessed should be determined by weight rather than by dosage, reducing Chavez' base offense level to 6, pursuant to the United States Sentencing Guidelines Manual § 2D1.1(d) (U.S. Sentencing Comm'n 2016)("U.S.S.G."),[2] see Presentence Investigation Report ¶ 8, at 5, filed August 13, 2018

---

[1]Chavez filed a Sentencing Memorandum & Opposed Motion for Variance, filed October 3, 2018 (Doc. 70)("Motion for Variance"). In the Motion for Variance, Chavez requests that the Court vary downward from the applicable guideline imprisonment range. The United States responds. United States' Sealed Response to Defendant's Sentencing Memorandum and Opposed Motion for Variance, filed October 10, 2018 (Doc. 71)("Response"). The United States requests that the Court apply an upward variance. Response at 5. The United States Probation Office ("USPO") filed an Addendum to the Presentence Report. Addendum to the Presentence Report, filed October 17, 2018 (Doc. 72)("Addendum"). In the Addendum, the USPO states that it "does not believe a downward variance is warranted based on the quantity of drugs the instant offense involved," among other reasons. Addendum at 1. The Court will consider the Motion for Variance, Response, and Addendum's arguments in favor of and in opposition to a proposed downward variance at the sentencing hearing on December 19, 2018, and will not determine the propriety of a variance in this Memorandum Opinion and Order.

[2]The Supreme Court of the United States held, in Peugh v. United States, 569 U.S. 530 (2013), that

(Doc. 55)("PSR"); (ii) whether, pursuant to U.S.S.G. § 4A1.1(e), the Court should assign only 1 criminal history point for Chavez' Aggravated Battery criminal history entry, see PSR ¶ 35, at 10, because the Aggravated Battery criminal history points correspond to the same sentence imposed for the Receiving or Transferring a Stolen Motor Vehicle criminal history entry, see PSR ¶ 33; (iii) whether, pursuant to U.S.S.G. § 4A1.1(e), the Court should assign only 1 criminal history point for Chavez' Auto Burglary and Conspiracy to Commit Auto Burglary criminal history entry, see PSR ¶ 40, at 12, because the Auto Burglary and Conspiracy to Commit Auto Burglary criminal history points correspond to the same sentence imposed for Possession of a Controlled Substance, to wit: Heroin criminal history entry, see PSR ¶ 38, at 11; (iv) whether, pursuant to U.S.S.G. § 4A1.1(e), the Court should assign only 1 criminal history point for Chavez' Possession of a Controlled Substance (Heroin) criminal history entry, see PSR ¶ 41, at 12, because the Possession of a Controlled Substance (Heroin) criminal history points correspond to the same sentence imposed for Possession of a Controlled Substance, to wit: Heroin criminal history entry, see PSR ¶ 38, at 11; (v) whether, pursuant to U.S.S.G. § 4A1.1(e), the Court should assign only 1 criminal

---

District courts must begin their sentencing analysis with the Guidelines in effect at the time of the offense and use them to calculate the sentencing range correctly; and those Guidelines will anchor both the district court's discretion and the appellate review process in all of the ways we have described. The newer Guidelines, meanwhile, will have the status of one of many reasons a district court might give for *deviating* from the older Guidelines, a status that is simply not equivalent for *ex post facto* purposes.

569 U.S. at 549. Because the 2016 Guidelines were in effect at the time of Chavez' crime, the Court uses the 2016 Guidelines to calculate Chavez' sentencing range and not the recently published 2018 version.

history point for Chavez' Residential Burglary, Larceny, and Receiving Stolen Property criminal history entry, see PSR ¶ 42, at 13, because the Residential Burglary, Larceny, and Receiving Stolen Property criminal history points correspond to the same sentence imposed for Possession of a Controlled Substance, to wit: Heroin criminal history entry, see PSR ¶ 38, at 11; (vi) whether, considering Chavez' objections to the PSR's calculation of his criminal history points, Chavez' criminal history should be 11 points rather than 19 points, see PSR ¶ 43, at 13; (vii) whether, if the Court determines Chavez' criminal history points are 11, his criminal history category is V, see PSR ¶ 44, at 13; (viii) whether, rather than placing Chavez at a Residential Reentry Center ("RRC") upon supervised release, the Court should order that Shayleen Macias, Chavez' current girlfriend, undergo screening as a suitable third party custodian for Chavez, see PSR ¶ 56, at 16; (ix) whether Chavez may reserve argument about his physical condition until sentencing, see PSR ¶ 58, at 16; and (x) whether, based on a total offense level of 13 and criminal history category of V, Chavez' guideline imprisonment range is 30 to 36 months, and not 33 to 41 months, see PSR ¶ 71, at 18. The Court concludes that: (i) Suboxone[3] quantity may not be calculated by dosage,

---

[3]Suboxone is a prescription drug, in which the active ingredient, buprenorphine, is a Schedule III controlled substance. See United States v. Burkholder, 816 F.3d 607, 610 (10th Cir. 2016). Buprenorphine, an opioid, is "commonly prescribed for treating heroin addicts." United States v. Burkholder, 816 F.3d at 610. In 2010, the United States Food and Drug Administration ("FDA") approved an application for a non-tablet formulation of Suboxone -- a sublingual strip, "in dosage strengths that are similar to the approved tablets; specifically, buprenorphine 2 mg/naloxone 0.5 mg and buprenorphine 8 mg/naloxone 2 mg." Application Number: 022410Orig1s000 Summary Review at 3, Center for Drug Evaluation and Research, Food and Drug Administration (Aug. 30, 2010). After several studies, the FDA determined that Suboxone can be prescribed for home use, because of its lower risk of abuse compared with heroin. See Daniel Genis, This Anti-Heroin Drug is Now King of the Jailhouse Drug Trade, Daily Beast, July

and that the Federal Bureau of Investigations ("FBI") agent's dosage determination is arbitrary, so the Court will sustain Chavez' objection to the last sentence of paragraph 8 of the PSR and remove that sentence, although the Court notes that the change does not affect Chavez' total offense level, which is 13; (ii) U.S.S.G. § 4A1.1(e) applies to none of the PSR paragraphs that Chavez mentions, because the charges which Chavez compares were either separated by an intervening arrest, or were neither charged in the same charging document, nor sentenced on the same day, and, thus, the Court overrules Chavez' Objections to his criminal history points calculation; (iii) having overruled Chavez' objections to his criminal history points calculation, the Court overrules Chavez' objections to his criminal history score and category; (iv) the Court will consider at the hearing on December 19, 2018, Chavez' request that the Court order the United States Probation Office ("USPO") to screen Shayleen Macias, Chavez' current girlfriend, as a third-party custodian; (v) the Court grants Chavez' request to discuss his physical condition at the December 19, 2018, hearing; and (vi) the Court overrules Chavez' objection to his U.S.S.G. calculation, which is accurate for a total offense level of 13 and a criminal history category of VI. The Court therefore sustains the Objections in part and overrules them in part.

---

17, 2014, https://www.thedailybeast.com/this-anti-heroin-drug-is-now-king-of-the-jailhouse-drug-trade (last visited Dec. 15, 2018).[3] Since its approval, Suboxone "has become a drug of abuse in its own right, resulting in prison smuggling efforts from New Mexico to Maine." Abby Goodnough and Katie Zezima, When Children's Scribbles Hide a Prison Drug, N.Y. Times (May 26, 2011) https://www.nytimes.com/2011/05/27/us/27smuggle.html?_r=1&hp.

## FACTUAL BACKGROUND

At the Plea Hearing, held before the Honorable Gregory B. Wormuth, United States Magistrate Judge for the District of New Mexico, Chavez pled guilty to the Indictment. See Indictment at 1, filed March 21, 2017 (Doc. 36). See also Clerk's Minutes at 1, filed May 30, 2018 (Doc. 50)("Plea Hearing Minutes"). The Indictment charges that Chavez

> unlawfully, knowingly and intentionally combined, conspired, confederated, agreed, and acted interdependently with each other and with other persons whose names are known and unknown to the Grand Jury to commit an offense defined in 21 U.S.C. §§ 841(a)(1) and (b)(1)(E), specifically, distribution of Suboxone. In violation of 21 U.S.C. § 846.

Indictment at 1. The Indictment also charges that Chavez, "an inmate of the Hidalgo County Detention Center . . . , attempted to obtain a prohibited object, specifically, Suboxone. In violation of 18 U.S.C. § 1791(a)(2)." Indictment at 2. There is no plea agreement in this case.

The Court takes the facts from the PSR. No one has objected to the PSR's recitation of the facts, so unless someone objects or wants an evidentiary hearing to present more facts, they will serve as the Court's findings of fact for purposes of this sentencing. The PSR describes the offense conduct as follows:

> 6. On December 3, 2015, **Christopher T. Chavez** was taken into federal custody for the offense detailed in paragraph 52 of this presentence report, for which he was eventually acquitted at trial on March 25, 2018. Throughout that term of incarceration, he and Yvonne Madrid, who were previously married, but divorced in 2011, remained in contact with each other via telephone calls and written correspondence. **Chavez'** prior defense counsel on that unrelated matter was provided with an envelope containing various letters and Christmas cards by Madrid. On December 22, 2017, at Madrid's request, **Chavez'** previous defense counsel attempted to deliver the envelope and Christmas cards to **Chavez** while he was in the custody of the Hidalgo County Detention Center in Lordsburg, New Mexico. The prior defense counsel advised detention center staff that the envelope

and its contents were not legal documents, but were from **Chavez'** family and allowed staff to inspect the contents. Subsequently, detention center staff discovered two Suboxone strips concealed within two of the Christmas cards. The contraband was turned over to the Lordsburg Police Department, then to the Federal Bureau of Investigations (FBI) for further investigation. **Chavez'** prior defense counsel provided a statement to the Lordsburg Police Department then departed the Hidalgo County Detention Center. According to the FBI, had it not been for the prior defense counsel's candid interaction with detention center staff, the Suboxone would have been delivered to **Chavez**.

7. On December 26, 2017, agents interviewed Madrid who stated during recent telephone conversations, **Chavez** pressured her to send him Suboxone. **Chavez** reportedly told Madrid he could make $300 selling the Suboxone inside the jail and would send her some of the proceeds. Madrid stated she was in need of the money and agreed to do so. Madrid stated she does not have a prescription for Suboxone so she purchased the two strips of Suboxone from an unknown individual "on the streets" of Albuquerque for $7 per strip. Madrid concealed the two Suboxone strips inside of the Christmas cards and mailed them to **Chavez'** prior defense counsel with the intent of having the defense counsel deliver them to **Chavez**.

PSR ¶¶ 6-7, at 4-5 (emphasis in original).

## PROCEDURAL BACKGROUND

In the PSR, the USPO calculated Chavez's base offense level at 13 pursuant to U.S.S.G. § 2P1.2(a)(2). See PSR ¶ 15, at 5. On November 6, 2018, the USPO filed email correspondence between the USPO and Chavez, discussing the same Objections which Chavez raised in his Objections. See Email from Mike Adolph, United States Probation Officer for the District of New Mexico to Mr. John Granberg, Attorney at Law (dated Aug. 31, 2018), filed November 6, 2018 (Doc. 78)("Email from Adolph to Mr. Granberg"). The Email from Adolph to Mr. Granberg contains the USPO's initial, informal, responses to some of Chavez' Objections, and the Court will discuss these responses, where relevant, in its analysis. The Court does not rely upon the Email

from Adolph to Mr. Granberg's statements as fact and has conducted its own research into the caselaw and the facts in order to verify the basis for the USPO's calculations in the PSR. The Court will further describe the Objections, see Objections at 1-3, with the USPO's responses, see Second Addendum at 1-3, in its analysis.

## RELEVANT LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551. To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted)(quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)). A

reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption and not one that the trial court can or should apply. See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[4] Guidelines sentence. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first

---

[4]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory. Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should

begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. <u>See United States v. Sierra-Castillo</u>, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-<u>Booker</u> have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). <u>Accord</u> <u>United States v. Chavez-Rodarte</u>, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

      The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

    . . . .

      The Supreme Court held in <u>United States v. Booker</u> that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in <u>Kimbrough v. United States</u> that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their <u>United States v. Booker</u>-granted authority to post-Guidelines analysis "variances." <u>Irizarry v. United States</u>, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. <u>See Gall v. United States</u>, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, <u>such as failing to calculate (or improperly calculating) the Guidelines range</u>, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's <u>Booker</u> arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the <u>Booker</u> calculus, even if the court does not grant a downward departure.

<u>United States v. Apodaca-Leyva</u>, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." <u>Kimbrough v. United States</u>, 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has concluded that the case of an illegal immigrant who re-entered the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted. <u>See</u> <u>United States v. Almendares-Soto</u>, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.). On the other hand, in <u>United States v. Jager</u>, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court concluded that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the

---

<u>United States v. Nolf</u>, 30 F. Supp. 3d 1200, 1222-24, (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction."

2011 WL 831279, at *14.

## LAW REGARDING CALCULATING CRIMINAL HISTORY

Section 4A1.1 of the U.S.S.G states, in relevant part: "The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A." U.S.S.G. § 4A1.1. Subsection (a) states: "Add 3 points for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). Application Note to 1 to U.S.S.G. § 4A1.1 states:

> Certain prior sentences are not counted or are counted only under certain conditions:
>
> A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period. *See* § 4A1.2(e).
>
> A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under this subsection only if it resulted from an adult conviction. *See* § 4A1.2(d).
>
> A sentence for a foreign conviction, a conviction that has been expunged, or an invalid conviction is not counted. *See* § 4A1.2(h) and (j) and the Commentary to § 4A1.2.

U.S.S.G. § 4A1.1 n.1. Subsection (b) to U.S.S.G. § 4A1.1(b) states: "Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)." There is no limit to the number

of points that may be added under either subsection (a) or subsection (b). <u>See</u> U.S.S.G. § 4A1.1 n.1 & n.2.

Section 4A1.2(d) treats "offenses committed prior to age eighteen." U.S.S.G. § 4A1.2(d). It provides that, "[i]f the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence." U.S.S.G. § 4A1.2(d). Application Note 7 to U.S.S.G. § 4A1.2 provides that,

> for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.

U.S.S.G. § 4A1.2 n.7.

Section 4A1.2(a)(2) of the U.S.S.G., which announces definitions and instructions for computing criminal history, provides:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2). According to § 4A1.2(a)(2)'s plain language, if an intervening arrest separates two sentences, the two sentences are considered separate for the purposes of criminal history calculation, even if the sentences were imposed at the same hearing. <u>See</u>, <u>e.g.</u>, <u>U.S. v. Roybal</u>, No. CR 14-1532 JB, 2014 WL 7474057, at *8 (D.N.M. Dec. 23, 2014)(Browning, J.). If

no intervening arrest separates two prior sentences, in order for the two sentences to be considered

a single sentence, one of § 4A1.2(a)(2)'s preconditions must apply, and the sentences must either

have emanated from the same charging instrument or been imposed on the same day. See U.S.S.G.

§ 4A1.2(a)(2). "That observation is, accordingly, the end of the debate for purposes of applying

§ 4A1.2(a)(2)." United States v. Bhakta, No. CR 16-1090 JB, 2017 WL 4785953, at *8 (D.N.M.

Oct. 21, 2017)(Browning, J.).

Section 4A1.1(e) provides:

> Add 1 point for each prior sentence resulting from a conviction for a crime
> of violence that did not receive any points under (a), (b), or (c) above because the
> sentence was treated as a single sentence, up to a total of 3 points for this subsection.

U.S.S.G. § 4A1.1(e). Application Note 5 to U.S.S.G. § 4A1.1 provides, in relevant part:

> In a case in which the defendant received two or more prior sentences as a
> result of convictions for crimes of violence that are treated as a single sentence (*see*
> § 4A.1.2(a)(2)), one point is added under § 4A1.1(e) for each such sentence that
> did not result in any additional points under § 4A1.1(a), (b), or (c). A total of up to
> 3 points may be added under § 4A1.1(e).

U.S.S.G. § 4A1.1 n.5.

## ANALYSIS

The Court sustains Chavez' Objections in part and overrules them in part. The Court

sustains Chavez' Objection to the last sentence of paragraph 8 of the PSR, because Suboxone

quantity is typically determined based on the drug weight equivalent of the number of units of

Suboxone at issue, and no reliable case-specific information indicates how many doses of

Suboxone are on a strip of Suboxone or how many doses of Suboxone constitute a single unit of

Suboxone and such information is needed to convert doses into a weight equivalent using the U.S.S.G. drug quantity tables in § 2D1.1. The Court overrules Chavez' Objections to his criminal history calculation, because U.S.S.G. § 4A1.1(e) does not apply to paragraphs 33, 35, 38, 40, 41, and 42 of the PSR. Having overruled Chavez' Objections to his criminal history calculation, the Court concludes that the PSR properly calculates Chavez' criminal history score and category, and, accordingly, the Court overrules Chavez' Objections to his criminal history score and category. The Court will consider Chavez' request that the Court order the USPO to screen Macias as a suitable third-party custodian at the December 19, 2018, hearing. The Court grants Chavez' request to reserve argument regarding his physical condition until the December 19, 2018, hearing. The Court overrules Chavez' Objection to paragraph 71 of the PSR, concluding that, based on the sentencing table in the U.S.S.G., corresponding to a total offense level of 13, and a criminal history category of VI -- Chavez' correctly calculated criminal history category -- the guideline imprisonment range is 33 to 41 months.

I.  **THE COURT SUSTAINS CHAVEZ' OBJECTION TO THE LAST SENTENCE OF PARAGRAPH 8 OF THE PSR, ATTRIBUTING TO HIM TEN DOSES OF SUBOXONE BASED ON AN ANONYMOUS FBI AGENT'S PROFFER.**

On May 30, 2018, Chavez pled guilty to a violation of 21 U.S.C. § 846, and 21 U.S.C. § 841(b)(1)(E), Conspiracy to Distribute Suboxone, and a violation of 18 U.S.C. § 1791(a)(2), Attempt to Possess Contraband in Prison. See PSR ¶ 2, at 4. Chavez objects to paragraph 8 of the PSR, which states in relevant part:

> According to the FBI agent, each Suboxone strip involved in the instant offense had a value of approximately $100 inside a jail/prison and indicated each strip

contained five doses or units which could be sold for approximately $20 per dose/unit. Consequently, Chavez . . . [is] accountable for 10 doses or units of Suboxone.

PSR ¶ 8, at 5. Chavez specifically objects to the last sentence of paragraph 8 of the PSR, holding him accountable for ten doses or units of Suboxone, because, Chavez contends, "that is an arbitrary and subjective estimation based off the statement of an anonymous FBI agent." Objections at 1. Chavez asserts that the FBI agent's proffer "is not supported by any scientific, scholarly, or measureable [sic] analysis that the Drug Quantity Table [in U.S.S.G. § 2D1.1(d)] is based upon." Objections at 1. Chavez argues that, if quantities of § 2D1.1's listed controlled substances "were calculated using dosages, it would lead to wildly different outcomes." Objections at 1. Chavez contends that the PSR should calculate Suboxone's quantity, like the quantities of the other controlled substances in the § 2D1.1 drug quantity tables, by weight and not by dosage. The United States submits no response. The USPO counters that, "[a]bsent any other valid means by which the weight of the Suboxone . . . can be determined," the FBI case agent's opinion is valid and paragraph 8's information "will not be omitted from the PSR, unless otherwise ordered by the Court." Second Addendum to the Presentence Report, filed December 7, 2018 (Doc. 81)("Second Addendum").

Section 2D1.1(D) provides that one unit of a Schedule III substance is equal to a converted drug weight of one gram of marihuana. See U.S.S.G. § 2D1.1(D). Note F to the Drug Quantity Table states that, for Schedule III substances, one unit "means one pill, capsule, or tablet." U.S.S.G. § 2D1.1(C) note F. The federal sentencing guidelines do not determine how many

sublingual Suboxone strips constitute a single unit of a Schedule III substance, nor do they permit calculating Suboxone quantity by dose rather than unit. See U.S.S.G. § 2D1.1(C) note F. When lawfully prescribed, a single Suboxone strip serves a single use for one patient. See, e.g., Buprenorphine with Naloxone (Suboxone Sublingual Film) for Opiate Dependence, Radar, NPS Medicinewise, https://www.nps.org.au/radar/articles/buprenorphine-with-naloxone-Suboxone-sublingual-film-for-opiate-dependence (last visited Dec. 15, 2018)("Radar"). A single Suboxone strip, however, may not have the same effect as a single Suboxone tablet. See Radar (stating that "[t]he bioavailability . . . of buprenorphine is about 20% greater for buprenorphine with naloxone 8mg / 2mg sublingual film than for the corresponding tablets; but this may not be clinically important for many patients."). Therefore, analogizing strips to tablets and determining that a single strip constitutes a single unit may not be accurate.

When Suboxone strips are smuggled into prisons, the smuggling inmate's whim determines the number of doses derived from a single strip of Suboxone. See, e.g., Daniel Genis, This Anti-Heroin Drug is Now King of the Jailhouse Drug Trade, Daily Beast, (July 17, 2014) https://www.thedailybeast.com/this-anti-heroin-drug-is-now-king-of-the-jailhouse-drug-trade (stating that, in the author's experience, when a Suboxone strip reaches a prison, "it is cut up into eight doses. Or 10 if the dealer is greedy."); Collin A. Young, Inmates Warn About Suboxone Use in Jail, Salem News (Aug. 16, 2018) https://www.salemnews.com/news/state_news/inmates-warn-about-suboxone-use-in-jail/article_39de3b9b-371a-5a85-840c-1b8bae5ca5e8.html (last visited Dec. 15, 2018)(quoting from an inmate in Massachusetts, who stated: "An eight-milligram

Suboxone strip can be cut into sixteenths . . . ."). The FBI agent contends that each Suboxone strip which Chavez attempted to acquire contains five doses or units. See PSR ¶ 8, at 5.[5] Presumably, the FBI agent assumes the Suboxone strips are cut up and distributed to multiple inmates -- however, the FBI agent does not explain his or her assumption that each strip that Chavez sought to acquire would be cut into five pieces rather than two or sixteen pieces. Sentencing two Suboxone smugglers differently, because one cut a Suboxone strip only in half while the other cut it into sixteenths would result in large sentencing disparities for the same quantity of narcotic, contrary to Congress' attempt to "provide a logical sentencing structure for drug offenses." U.S.S.G. § 2D.1.1 n.27.[6] Smuggling inmates may cut up Suboxone pills in prisons and distribute a single pill in multiple doses to multiple inmates -- yet, for the Guidelines' purposes, the inmate will be held accountable for the number of pills distributed -- not the number of doses. See U.S.S.G. § 2D1.1(D). See Dailey v. United States, Nos. 2:14-CR-96-JRG-MCLC-1, 2:16-CV-163-JRG, 2017 WL 2124095, at *2 (E.D. Tenn. May 15, 2017)(Greer, J.)(stating that the USPO

_____

[5]The definition of "unit," in U.S.S.G. § 2D1.1(C) note F, does not create an equivalence between doses and units, and does not suggest that a single dose equals a single unit for sentencing purposes.

[6]To avoid sentencing disparities, the Supreme Court stated that, in 1984, "Congress amended the narcotics laws . . . to calculate penalties by the weight of the pure drug involved." Neal v. United States, 516 U.S. 284, 288 (1996). The Supreme Court stated: "Focusing on the pure drug, however, often allowed retail traffickers, who supplied street markets with mixed or diluted drugs ready for consumption, to receive sentences lighter than what Congress deemed necessary." Neal v. United States, 516 U.S. at 288-89. The Supreme Court stated that in 1986, therefore, Congress adopted a new approach "under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence." Chapman v. U.S., 500 U.S. 453, 460 (1991).

deemed the petitioner "responsible for 124 units of Suboxone," where one pill equaled one unit, and the USPO then converted units to drug weight, arriving at a marihuana equivalent and a base offense level based on the marijuana equivalent).

Suboxone strips pose a sentencing quandary which Congress has yet to rectify. Sentencing Suboxone strip possession or distribution by dose results in unwanted sentencing disparities depending on whether a Suboxone smuggler elects to cut Suboxone strips into few or many pieces. If, for example, the difference in buprenorphine availability between the two forms of Suboxone is important, determining that a single Suboxone strip equals a single Suboxone tablet for sentencing purposes may create sentencing disparities among individuals charged with possessing the same narcotic, albeit in different forms. See Radar (stating that "[t]he bioavailability . . . of buprenorphine is about 20% greater for buprenorphine with naloxone 8mg / 2mg sublingual film than for the corresponding tablets . . . ."). In 2010, the United States Food and Drug Administration ("FDA") approved a 2 milligram and an 8 milligram version of a Suboxone strip. See Application Number: 022410Orig1s000 Summary Review at 3. Federal courts generally do not, however, indicate in their decisions, in referring to particular Suboxone strips, whether the strips are two milligrams or eight milligrams. See, e.g., United States v. Young, Crim. No. ELH-13-151 (#25), 2018 WL 1426501, at *10 (D. Md. March 22, 2018)(Hollander, J.)(unpublished)(referring to "fewer than ten Suboxone strips."). Ausherman v. W.V.C.F., No. 2:17-cv-00211-WTL-MJD, 2017 WL 3980571, at *1 (S.D. Ind. Sept. 11, 2017)(Lawrence, J.)(unpublished)(referring to "190 Suboxone strips"); United States v. Cureton, 661 F. App'x 369, 372 (6th Cir.

2016)(unpublished)(referring to "four Suboxone strips"). It might make sense to determine Suboxone quantity in strip form by the milligrams of Suboxone contained in each strip at issue. Congress, however, has not spoken on the issue, and the PSR does not contain that information. The Court agrees with Chavez, nevertheless, that the FBI agent's determination that each Suboxone strip would be cut into five doses and that Chavez, therefore, should be accountable for ten doses of Suboxone, is arbitrary, and the Court may not rely upon that assertion. Although Congress has not clarified, for sentencing purposes, how courts should determine Suboxone quantity when in strip form, the Court concludes that Congress cannot have intended that Suboxone quantity determinations turn on into how many pieces a particular inmate cuts a Suboxone strip. Accordingly, the Court sustains Chavez' objection in part and strikes the last sentence of the PSR's paragraph 8.

The Court notes, however, that striking the last sentence of paragraph 8 does not affect the PSR's calculation of Chavez' total offense level as 13, which the Court concludes is correct. See PSR ¶ 15, at 5. The USPO states that "the offense level computations are not based on the weight of the Suboxone, but rather on the fact that it is a narcotic drug, because the offense level is calculated under USSG § 2P1.2 and not 2D1.1." Second Addendum at 1. The USPO contends, therefore, that Chavez' "assertion that the base offense level should be 6 under 2D1.1 is moot." Second Addendum at 1.

The PSR's paragraph 14 states that the offenses to which Chavez pled guilty

[a]re grouped for guideline calculation purposes because the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of

a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior. USSG § 3D1.2(d).

PSR ¶ 14, at 5. In the circumstances described above, § 3D1.2(d) requires grouping all counts involving substantially the same harm. See U.S.S.G. § 3D1.2(d). Section 3D1.2(b) provides:

> In the case of counts grouped together pursuant to 3D1.2(d), the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three. When the counts involve offenses of the same general type to which different guidelines apply, apply the offense guideline that produces the highest offense level.

U.S.S.G. § 3D1.2(b). Application note 3 to § 3D1.2(b) provides that, if "the counts in the Group are covered by different guidelines, use the guideline that produces the highest offense level." U.S.S.G. § 3D1.2(b) n.3. The guideline for a violation of 18 U.S.C. § 1791(a)(2) is § 2P1.2. See U.S.S.G. § 2P1.1. Section 2P1.2 concerns Providing or Possessing Contraband in Prison, and provides in subsection 2 that "the base offense level is 13," U.S.S.G. § 2P1.2(a)(2),"if the object was a weapon (other than a firearm or a destructive device), any object that might be used as a weapon or as a means of facilitating escape, ammunition, LSD, PCP, methamphetamine, or a narcotic drug." U.S.S.G. § 2P1.2(a)(2).

Here, Chavez pled guilty to attempting to possess a narcotic drug, Suboxone, in prison as contraband, in violation of 18 U.S.C. § 1791(a)(2), Attempt to Possess Contraband in Prison. The Court agrees with the USPO's determination that the base offense level for Chavez' violation of 18 USC § 1791 is 13. See U.S.S.G. § 2P1.2(a)(2). See also PSR ¶ 15, at 5. Because of § 3D1.2(b), the USPO grouped Chavez' counts and applied the guideline that produces the highest offense

level -- § 2P1.2.  The USPO calculated Chavez' base offense level, therefore, solely using § 2P1.2, which is not a quantity-based guideline provision.  See U.S.S.G. § 2P1.2.  Accordingly, the Court concludes that the USPO is correct that Chavez' quantity argument is moot.  Although the Court agrees to strike the final sentence of the PSR's paragraph 8, there is no resulting change to Chavez' base offense level, which is 13.

## II.    THE COURT OVERRULES CHAVEZ' OBJECTIONS, PURSUANT TO U.S.S.G. § 4A1.1(E), TO THE PSR'S CALCULATION OF HIS CRIMINAL HISTORY POINTS.

Chavez raises four objections on the basis of U.S.S.G. § 4A1.1(e).  See Objections at 2-3.

Section 4A1.1(e)'s application note provides in part:

> In a case in which the defendant received two or more prior sentences as a result of convictions for crimes of violence that are treated as a single sentence (*see* § 4A1.2(a)(2)), one point is added under § 4A1.1(e) for each such sentence that did not result in any additional points under § 4A1.1(a), (b), or (c).  A total of up to 3 points may be added under § 4A1.1(e).

U.S.S.G. § 4A1.1 n.5.  First, § 4A1.1(a) directs that, in determining a defendant's criminal history category, "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a).  The Guidelines state:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense).  If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

U.S.S.G. § 4A1.2(a)(2).  Finally, a probation officer must "add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points . . . because such

sentence was treated as a single sentence . . . ." U.S.S.G. § 4A1.1(e). "The probation officer may add up to three additional points under Guideline § 4A1.1(e)." United States v. Chan-Xool, 716 F. App'x 274, 277 (5th Cir. 2017). The United States Court of Appeals for the Sixth Circuit explained:

> Subsection (e) carves out an exception to another provision of the Guidelines, § 4A1.2(a)(2), which indicates that multiple prior sentences must be treated as a single sentence if the underlying offenses were not separated by an intervening arrest, and "the sentences resulted from offenses contained in the same charging instrument . . . or . . . the sentences were imposed on the same day." [U.S.S.G. § 4A1.2(a)(2).] Under § 4A1.1(e), a sentence that would remain uncounted for purposes of a defendant's criminal history calculation nonetheless receives a point if the underlying conviction was for a crime of violence. In other words, if a defendant received two sentences for two crime-of-violence convictions, § 4A1.1(e) requires courts to assess a point for each sentence.

United States v. Tanner, 837 F.3d 596, 600 (6th Cir. 2016). The Court addresses each of Chavez' criminal-history-points-based objections in turn.

First, Chavez objects to paragraph 35 of the PSR's imposition of 3 points for his Aggravated Battery conviction, contending that, pursuant to § 4A1.1(e), only 1 criminal history point should be attributable to paragraph 35's described criminal conduct, because paragraph 35 refers to the same sentence as paragraph 33. See Objections at 2. In an email that the USPO sent to Chavez, informally responding to his Objections, the USPO stated:

> In this instance, the defendant committed the offense outlined in paragraph 33 on June 25, 1999, and was arrested that same date which counts as the intervening arrest. He committed the offense outlined in paragraphed [sic] 35 on September 13, 2000, while in the custody of the Southern NM Correction Facility. Further, the offense [sic] in paragraphs 33 and 35, were charged in different charging documents, they were sentenced on different dates in different courts, and the sentence imposed in paragraph 35 was ordered to run consecutive to all other sentences.

Email from Adolph to Mr. Granberg at 2. The USPO responded in the Second Addendum as follows:

> **Response 2:** Pursuant to USSG § 4A1.2(a)(2), the convictions in paragraphs 33 and 35 of the PSR are not considered related and are not treated as a single sentence, because they were separated by an intervening arrest. Even if there were not an intervening arrest, they are still not related, because the offenses were not contained in the same charging document, and the sentences in each case were not imposed on the same day. Moreover, pursuant to Application Note 11 under § 4A1.2, if at the time of a probation revocation another sentence was imposed for a new criminal conviction, that conviction would be computed separately from the sentence imposed for the revocation. Therefore, the conviction listed in paragraph 35 is appropriately assessed 3 criminal history points under § 4A1.1(a), and § 4A1.1(e) is not applicable.

Second Addendum at 2.

Paragraph 33 states that, on June 25, 1999, Chavez was arrested for two counts: Receiving or Transferring a Stolen Motor Vehicle, and Conspiracy to Commit Receiving or Transferring a Stolen Motor Vehicle. See PSR ¶ 33, at 10; Grand Jury Indictment at 1, filed December 18, 2018 (Doc. 83)("July 13, 1999 Indictment"). The July 13, 1999 Indictment states, in part:

> That on or about the 25th day of June, 1999, in Bernalillo County, New Mexico, the above-named defendant had possession of a vehicle, a 1988 Jeep Cherokee belonging to Randy Romero, which has been stolen, and at the time the defendant had the vehicle in his possession he knew or had reason to know that the vehicle had been stolen . . . .

July 13, 1999 Indictment at 1. On November 24, 1999, the Second Judicial District Court, Albuquerque, New Mexico, sentenced Chavez as to both counts to three and a half years of custody, two and a half years suspended, credit for 209 days, and placed Chavez on two and a half years of supervised probation and one year of parole. See PSR ¶ 33, at 10. On December 5, 2001,

Chavez' probation was revoked, and Chavez was sentenced to six and a half years of custody, and two years of parole. See PSR ¶ 33, at 10.

Paragraph 35 indicates that, on December 21, 2000, Chavez was arrested for two counts: Aggravated Battery (Deadly Weapon), and Conspiracy to Commit Aggravated Battery (Deadly Weapon). See PSR ¶ 35, at 10. The Grand Jury Indictment, filed December 18, 2018 (Doc. 84)("December 21, 2000 Indictment") states that:

> on or about September 13, 2000, in Dona Ana County, New Mexico, the above-named defendant did touch or apply force to Andrew Miller, with a shank, an instrument or object which, when used as a weapon, could cause death or very serious injury, and the defendant intended to injure Andrew Miller or another, a third degree felony . . . .

December 21, 2000 Indictment at 3. On October 22, 2001, the Third Judicial District Court, Las Cruces, New Mexico sentenced Chavez for the two counts to six and a half years of confinement, and two years of parole. See PSR ¶ 35, at 10. Because the described offense is a "prior sentence of imprisonment exceeding one year and one month," the USPO assigned Chavez, pursuant to § 4A1.1(a), three criminal history points. U.S.S.G. § 4A1.1(a).

Chavez was arrested for the offenses that paragraph 33 describes, on June 25, 1999. See July 13, 1999 Indictment at 2. Chavez committed the offenses that paragraph 35 describes, on or about September 13, 2000. See December 21, 2000 Indictment at 3. Because Chavez was arrested for the offenses that paragraph 33 describes before he committed the offenses that paragraph 35 describes, the Court agrees with the USPO and concludes, pursuant to U.S.S.G. § 4A1.2(a)(2), and by a preponderance of the evidence, that an intervening arrest separates the offenses that the PSR's paragraphs 33 and 35 describe. See PSR ¶¶ 33, 35, at 10.

Second, Chavez objects to the imposition of 3 points for his Auto Burglary & Conspiracy to Commit Auto Burglary conviction in paragraph 40 of the PSR, contending that, pursuant to § 4A1.1(e), only 1 criminal history point should be attributable to paragraph 40's described criminal conduct, because paragraph 40 refers to the same sentence as paragraph 38. See Objections at 2. The USPO responds as follows:

> **Response 3:** Pursuant to USSG § 4A1.2(a)(2), the convictions listed in paragraphs 38 and 40-42 are not considered related and are not treated as a single sentence, because they were separated by intervening arrests. Therefore, the convictions listed in paragraphs 40-42 are appropriately assessed 3 criminal history points each under § 4A1.1(a), and § 4A1.1(e) is not applicable.

Second Addendum at 2. Pursuant to U.S.S.G. § 4A1.2(a)(2), convictions separated by intervening arrests are treated as separate sentences for the purposes of criminal history calculations. See U.S.S.G. § 4A1.2(a)(2).

Paragraph 38 indicates that, on March 28, 2010, Chavez was arrested for Possession of a Controlled Substance, to wit: Heroin. See PSR ¶ 38, at 11. On June 14, 2011, the Second Judicial District Court sentenced Chavez to 30 months custody and 1 year of parole, concurrent with the sentence imposed for the conviction in paragraph 40, and consecutive to two other sentences. See PSR ¶ 38, at 11. Paragraph 40 indicates that, on July 10, 2010, the two counts for which Chavez was arrested were: Auto Burglary, and Conspiracy to Commit Auto Burglary. See PSR ¶ 40, at 12. On June 14, 2011, the Second Judicial District Court sentenced Chavez for the two counts to five years of custody, two years of parole. See PSR ¶ 40, at 12. Because the described offense is

a "prior sentence of imprisonment exceeding one year and one month," the USPO assigned Chavez 3 criminal history points, pursuant to § 4A1.1(a). U.S.S.G. § 4A1.1(a).

The sentences in paragraphs 38 and 40 of the PSR are not related, because an intervening arrest separates the arrest for the offenses in paragraph 38 from the commission of the crimes in paragraph 40. See U.S.S.G. § 4A1.2(a)(2)(stating that prior sentences are separate if separated by an intervening arrest but, if there is no intervening arrest, prior sentences are counted separately unless the sentences result from offenses charged in the same charging document or the sentences were imposed on the same day). Paragraph 38 states: "Court records indicate the defendant as found to be in possession of heroin, a syringe, and a pipe. He reportedly dropped or placed the syringe on the floor with intent to prevent conviction of himself." PSR ¶ 38, at 11-12. Chavez was arrested for the offense in paragraph 38 on March 28, 2010. See PSR ¶ 38, at 11. See also Grand Jury Indictment at 1, filed December 18, 2018 (Doc. 85)("July 19, 2010 Indictment"). Paragraph 40 states:

> The defendant conspired with others and entered a 2003 Mitsubishi without the owner's consent. The defendant reportedly took a bowling bag, shoes, a softball bag, bats, gloves, and softballs, with a value between $250 and $500. The defendant was encountered at a location nearby and taken into custody.

PSR ¶ 40, at 12. Chavez committed the offense that paragraph 40 describes on or about July 10, 2010. See Grand Jury Indictment at 1, filed December 18, 2018 (Doc. 86)("July 26, 2010 Indictment"). Because Chavez was arrested for the offenses that paragraph 38 describes before he committed the offenses that paragraph 40 describes, the Court agrees with the USPO and concludes, pursuant to U.S.S.G. § 4A1.2(a)(2), and by a preponderance of the evidence, that an

intervening arrest separates the offenses that the PSR's paragraphs 38 and 40 describe. See PSR

¶¶ 38, 40, at 11-12; July 19, 2010 Indictment; July 26, 2010 Indictment. Therefore, pursuant to

§ 4A1.2 n.11 and § 4A1.1(a), the USPO properly assigned Chavez 3 criminal history points for

the criminal conviction in paragraph 40 of the PSR. See PSR ¶ 40, at 12.

Third, Chavez objects to paragraph 41 of the PSR's imposition of 3 points for his

Possession of a Controlled Substance conviction, contending that, pursuant to § 4A1.1(e), only 1

criminal history point should be attributable to paragraph 41's described criminal conduct, because

paragraph 41 refers to the same sentence as paragraph 38. See Objections at 2. The USPO

responds that an intervening arrest separates the sentences in paragraphs 38 and 41. See supra at

25 (quoting Second Addendum at 2). Paragraph 41 indicates that, on September 10, 2010, Chavez

was arrested for Possession of a Controlled Substance (Heroin). See PSR ¶ 41, at 12. On June 14,

2011, the Second Judicial District Court sentenced Chavez to five years of custody and two years

of parole. See PSR ¶ 41, at 12. Because the described offense is a "prior sentence of imprisonment

exceeding one year and one month," the USPO assigned Chavez, pursuant to § 4A1.1(a), three

criminal history points. U.S.S.G. § 4A1.1(a).

The sentences for the offenses in paragraphs 38 and 41 of the PSR were imposed on the

same day.[7] See PSR ¶¶ 38, 41, at 11, 12. The sentences are not related, however, because an

---

[7]The offenses that paragraphs 38, 40, 41, and 42 describe were sentenced on June 14, 2011, before the Honorable Jacqueline D. Flores, New Mexico District Judge for the Second Judicial District Court of the County of Bernalillo. See Judgment, filed December 18, 2018 (Doc. 89). However, as the Court explains in this MOO, the sentences in paragraphs 38, 40, 41, and 42 are considered separate sentences for the purpose of U.S.S.G. criminal history calculation, pursuant to

intervening arrest separates the arrest for the offenses in paragraph 38 from the commission of the crimes in paragraph 41. See U.S.S.G. § 4A1.2(a)(2). Paragraph 41 states:

> While in the custody of the Metropolitan Detention Center, detention center staff found the defendant slouched over and unresponsive. The defendant was found to be in possession of heroin, spoons, and a syringe. The defendant was re-booked into the detention center for the above noted charges.

PSR ¶ 40, at 12. After March, 2010, when Chavez was arrested for "possession of heroin, a syringe, and a pipe," which he reportedly dropped or placed on the floor to prevent conviction of himself, see PSR ¶ 38, at 11-12, and while in the Metropolitan Detention Center's custody, staff found Chavez slouched over and unresponsive, and then re-booked him for Possession of a Controlled Substance (Heroin) on September 10, 2010. Chavez' arrest for the paragraph 38 offense, therefore, predated his commission of the paragraph 41 offense. See Grand Jury Indictment at 1, filed December 18, 2018 (Doc. 87)("September 30, 2010 Indictment")(stating that Chavez committed the charged offenses "on or about the 10th day of September, 2010."). Because Chavez was arrested for the offenses that paragraph 38 describes before he committed the offenses that paragraph 41 describes, the Court agrees with the USPO and concludes, pursuant to U.S.S.G. § 4A1.2(a)(2), and by a preponderance of the evidence, that an intervening arrest separates the offenses that the PSR's paragraphs 38 and 41 describe. See PSR ¶¶ 38, 41, at 11-12. Therefore, pursuant to § 4A1.2 n.11 and § 4A1.1(a), the USPO properly assigned Chavez 3 criminal history points for the criminal conviction described in paragraph 41 of the PSR. See PSR ¶ 41, at 12.

---

U.S.S.G. § 4A1.2(a)(2), because they are separated by intervening arrests.

Fourth, Chavez objects to paragraph 42 of the PSR's imposition of 3 points for his Residential Burglary, Larceny, and Receiving Stolen Property conviction. See Objections at 2. Chavez contends that, pursuant to § 4A1.1(e), only 1 criminal history point should be attributable to paragraph 42's described criminal conduct, because paragraph 42 refers to the same sentence as paragraph 38. See Objections at 2. The USPO responds that an intervening arrest separates the sentences in paragraphs 38 and 41. See supra at 25 (quoting Second Addendum at 2).

Paragraph 42 indicates that, on March 27, 2011, the three counts for which Chavez was arrested were: Residential Burglary, Larceny over $500, but less than $2,500, and Receiving Stolen Property over $500, but less than $2,500. See PSR ¶ 42, at 13. On June 14, 2011, the Second Judicial District Court sentenced Chavez to five years of custody and two years of parole. See PSR ¶ 42, at 13. Because the described offense is a "prior sentence of imprisonment exceeding one year and one month," the USPO assigned Chavez 3 criminal history points, pursuant to § 4A1.1(a). U.S.S.G. § 4A1.1(a).

The sentences for the offenses in paragraphs 38 and 40 of the PSR were imposed on the same day. See PSR ¶¶ 38, 42, at 11, 13. The sentences are not related, however, because an intervening arrest separates the arrest for the offenses described in paragraph 38 from the commission of the crimes in paragraph 40. See U.S.S.G. § 4A1.2(a)(2). Chavez committed the offenses that paragraph 42 describes "on or about the 27th day of March, 2011 . . . ." Grand Jury Indictment at 1, filed December 18, 2018 (Doc. 88)("April 13, 2011 Indictment"). Chavez was

arrested for the offense in paragraph 38 on March 28, 2010, before he committed the offense in paragraph 42.  See PSR ¶ 38, at 11; April 13, 2011 Indictment at 1.  Paragraph 42 states:

> The defendant and others entered a hotel room without consent, took numerous items, including a laptop computer, small tool boxes, a purse, backpack, prescription medication, clothes, jackets, earrings, a wedding ring, three cell phones, hair clippers, and a camp stove, which did not belong to them.  The items had a market value of between $250 and $2,500.  They reportedly urinated on the bed as well.  The defendant and the others fled the scene, but were eventually apprehended at another location and taken into custody.

PSR ¶ 42, at 13.  Because Chavez was arrested for the offenses that paragraph 38 describes before he committed the offenses that paragraph 42 describes, the Court agrees with the USPO and concludes, pursuant to U.S.S.G. § 4A1.2(a)(2), and by a preponderance of the evidence, that an intervening arrest separates the offenses that the PSR's paragraphs 38 and 42 describe.  See PSR ¶¶ 38, 42, at 11-12.  Therefore, pursuant to § 4A1.2 n.11 and § 4A1.1(a), the USPO properly assigns Chavez 3 criminal history points for the criminal conviction in paragraph 42 of the PSR, because an intervening arrest separates the sentences that paragraphs 38 and 42 describe.  See PSR ¶ 42, at 13.

## III.  THE COURT OVERRULES CHAVEZ' OBJECTIONS TO THE PSR'S CALCULATION, IN PARAGRAPHS 43 AND 44, OF HIS CRIMINAL HISTORY SCORE AND CATEGORY.

Chavez objects that his criminal history points should be 11, and that his criminal history category should be five.  See Objections at 3.  Chavez bases these objections on his assertions that the USPO miscalculated his criminal history points.  See Objections at 2-3.  Paragraph 43 of the PSR identifies Chavez' total criminal history points as 19, and paragraph 44 identifies his criminal history category as VI.  See PSR ¶¶ 43, 44, at 13.  The Court determined, supra section II, that the

PSR properly calculates Chavez' criminal history points pursuant to § 4A1.2 n.11 and § 4A1.1(a).

Accordingly, the Court agrees with the USPO's response: "As outlined above, the [USPO] maintains the criminal history points, and thereby the criminal history category, are correctly assessed." Second Addendum at 2. The Court overrules Chavez' Objections to paragraphs 43 and 44.

## IV. THE COURT WILL CONSIDER CHAVEZ' REQUEST TO SCREEN SHAYLEEN MACIAS AS A SUITABLE THIRD-PARTY CUSTODIAN, AT THE DECEMBER 19, 2018, HEARING.

Chavez "requests that Shayleen Macias be screened as a suitable third party custodian upon commencing his term of supervised release." Objections at 3. Chavez asserts that Macias' "biographical information will be provided to United States Probation under separate cover." Objections at 3. The USPO responds that paragraph 56 of the PSR, to which Chavez objects,

> recommends he be placed at a residential re-entry center (RRC) upon his release from custody due to the small size of his mother's residence and the number of people living there. The defendant is requesting that Shayleen Macias and her residence be screened to determine if her residence would be suitable for him upon commencing his term of supervised release. Ms. Macias stated she has known the defendant for approximately 15 years; however, they have been in a relationship for approximately one year. On September 27, 2018, the United States Probation Office conducted a home inspection at Ms. Macias' residence, and the residence appears suitable. However, as this relationship is relatively new, and the defendant has been in custody for its duration, the United States Probation Office does not believe this to be a suitable placement. The defendant has been in custody for a lengthy period of time, and placement at an RRC is recommended to allow him the opportunity to successfully reintegrate into society.

Second Addendum at 2. The USPO's response to Chavez' Objection suggests that, pursuant to Chavez' request, Macias has been screened as a possible third-party custodian. The ultimate determination whether Macias is a suitable third-party custodian for Chavez upon supervised

release, however, remains for debate. The USPO contends, in an email to Chavez, that "[d]uring the presentence report interview, the defendant advised of his intentions to reside at his parents' residence . . . ." Email from Adolph to Mr. Granberg at 3. The Court will reserve its decision on Chavez' request that the USPO place him with Macias upon his release until the hearing on December 19, 2018.

## V. THE COURT WILL GRANT CHAVEZ' REQUEST AND PERMIT HIM TO ARGUE HIS PHYSICAL CONDITION AT THE DECEMBER 19, 2018 HEARING.

Chavez "objects to paragraph number fifty eight," but provides no further detail, requesting "to reserve argument for this paragraph for the time of sentencing." Objections at 3. The USPO indicates that they are unable to respond, "without additional information as to what specifically the defendant is objecting." Second Addendum at 3. Paragraph 58 provides a description of Chavez' physical condition and reports a neck injury, resulting in nerve damage and a need for surgery. See PSR ¶ 58, at 16. The Court grants Chavez' request to further inform the Court of any updates or changes to his physical condition at the time of sentencing on December 19, 2018.

## VI. THE COURT OVERRULES CHAVEZ' OBJECTION TO PARAGRAPH 71 OF THE PSR, CONCLUDING THAT THE PSR PROPERLY CALCULATES THE GUIDELINE IMPRISONMENT RANGE.

Chavez objects to paragraph 71 of the PSR, "that based on a total offense level of thirteen (13) and criminal history category of five (5), the guideline imprisonment range is 30 to 36 [sic] months." Objections at 3. Paragraph 71 provides: "Based upon a total offense level of 13 and a criminal history category of VI, the guideline imprisonment range is 33 months to 41 months." PSR ¶ 71, at 18. The USPO "maintains the defendant's criminal history category is VI, which

when combined with a total offense level of 13, results in a guideline imprisonment range of 33 to 41 months." Second Addendum at 3. The Court agrees with the USPO's guideline calculation. The Sentencing Table states that, for a total offense level of 13 and a criminal history category of VI, the guideline imprisonment range is 33 to 41 months. See U.S.S.G. Ch. 5 Pt. A. The Court upheld the PSR's calculation of Chavez' criminal history points and category, and accordingly, the Court overrules Chavez' Objection to the guideline imprisonment range calculated in paragraph 71 of the PSR.

**IT IS ORDERED** that the Objections in Defendant's Responses to Pre-Sentence Report, filed December 5, 2018 (Doc. 80), are sustained in part, and overruled in part. The Court will strike the last sentence of paragraph 8 of the PSR, the Court will consider Chavez' request to screen Macias as a third-party custodian at the December 19, 2018, hearing, and the Court grants Chavez' request to further inform the Court of any updates or changes to his physical condition at the time of sentencing on December 19, 2018. The Court overrules Chavez' Objections to the PSR's criminal history points calculation, and to the PSR's determination of his criminal history category, total offense level, and the applicable guideline imprisonment range.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
   United States Attorney
Maria Ysabel Armijo
Randy M. Castellano
Matthew M. Beck
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Orlando Mondragon
El Paso, Texas

--and--

John L. Granberg
Granberg Law Office
El Paso, Texas

      *Attorneys for the Defendant*